**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

SHAWNTELL
MILLS-SANCHEZ,

|  |  |
|---|---|
| **Plaintiff,** | **1:18-cv-723** **(GLS/DJS)** |

v.

**THE RESEARCH FOUNDATION**
**FOR THE STATE UNIVERSITY**
**OF NEW YORK et al.,**

**Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Vincent U. Uba | VINCENT U. UBA, ESQ. |
| 750 Broadway | |
| Albany, NY 12207 | |
| | |
| **FOR THE DEFENDANTS:** | |
| _The Research Foundation for the_ | |
| _State University of New York, John_ | |
| _Thompson, Pamela Potter-Reger,_ | |
| _Deborah McGuire, and Eugene Monaco_ | |
| Research Foundation of SUNY | ALLISON ZULLO GOTTLIEB, |
| 35 State Street | ESQ. |
| 5th Floor | |
| Albany, NY 12207 | |
| | |
| _Research Foundation for Mental_ | |
| _Hygiene Inc. and Joanne Trinkle_ | |
| Bond, Schoeneck & King, PLLC | MICHAEL D. BILLOK, ESQ. |
| 268 Broadway, Suite 104 | |
| Saratoga Springs, NY 12866 | |

*Welfare Research, Inc., Lee*        NO APPEARANCES
*Lounsbury, and New York State*
*Office of Children and Family*
*Services*

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Shawntell Mills-Sanchez brings this action against the Research Foundation for the State University of New York (RF SUNY), John Thompson, Pamela Potter-Reger, Deborah McGuire, Eugene Monaco (collectively "RF SUNY employees"), the Research Foundation for Mental Hygiene Inc. (RFMH), Joanne Trinkle, Welfare Research, Inc. (WRI), Lee Lounsbury, and the New York State Office of Children and Family Services (NYSOCFS). She alleges racial discrimination, retaliation, hostile work environment, conspiracy, and a violation of her rights under the Equal Protection Clause of the Fourteenth Amendment. (*See generally* Am. Compl., Dkt. No. 13.) Pending is a motion to dismiss filed by RFMH and Trinkle, (Dkt. No. 18), as well as a motion to dismiss filed by RF SUNY and RF SUNY employees, (Dkt. No. 22). For the

following reasons, both motions are granted.

## II. **Background**

A. **Facts**[1]

Plaintiff, a black female, began working for RF SUNY[2] in or around 2005.  (Am. Compl. ¶¶ 1, 89.)  She complains of unfair treatment from 2007 until her employment ended in 2015, which allegedly continued in the form of "blacklisting."  (*See generally id.*)

In 2007, plaintiff's supervisor, Diane DiGiorgio, who is white, "was granted an accommodation so she could work from home two days a week."  (*Id.* ¶¶ 91-92.)  Potter-Reger, DiGiorgio's supervisor, required plaintiff to work around DiGiorgio's schedule, despite plaintiff's expressed concern that she was getting inadequate supervision and training.

---

[1] Unless otherwise noted, the facts are drawn from plaintiff's Amended Complaint and presented in the light most favorable to her.

[2] RF SUNY is a private, not-for-profit educational corporation organized under New York State law.  (Am. Compl. ¶ 4.)  Thompson, a white male, was a "Principal Education Specialist" at RF SUNY who briefly supervised plaintiff.  (*Id.* ¶¶ 18, 106-07.)  "Sometime in 2015," he began working for NYSOCFS.  (*Id.* ¶ 188.)  McGuire was the Director of the Child Welfare Unit at RF SUNY.  (*Id.* ¶¶ 35, 179.)  Monaco was RF SUNY's Executive Director.  (*Id.* ¶ 30.)  Potter-Reger was the Child Welfare Training Manager at RF SUNY who became plaintiff's supervisor "[i]n or around 2010."  (*Id.* ¶¶ 25, 115.)  The race of McGuire, Monaco, and Potter-Reger is not apparent from the pleadings.

(*Id.* ¶¶ 92-95.)

In late 2008, Robert Salisbury[3] "repeatedly made it known in the office that he held strong opinions regarding . . . race relations"; "would repeatedly try to bait the few African American employees, including plaintiff, into racially charged conversations that reflect negatively on African Americans"; "claimed to have been robbed in New York City and made a point to state 'it certainly wasn't by a white or Chinese guy'"; and "frequently mocked plaintiff that [RF SUNY] would rather hire an unqualified [w]hite/Caucasian individual than a qualified [b]lack/African American individual."[4] (*Id.* ¶¶ 97-98, 101-03.) "In or around August 2012, Salisbury called a pregnant female African American []employee . . . 'a lazy piece of shit'" in the presence of other employees.[5] (*Id.* ¶ 128.)

---

[3] The Amended Complaint does not allege that Salisbury was an RF SUNY employee or, if he was, what position he held. However, it can be inferred that he worked with plaintiff at RF SUNY. (Am. Compl. ¶ 142.)

[4] Plaintiff also alleges that Salisbury made comments regarding certain groups of immigrants. (Am. Compl. ¶¶ 98-100.) However, it is unclear how such comments are germane to plaintiff's racial discrimination claims.

[5] Although plaintiff alleges that Potter-Reger and Thompson were present when Salisbury made these remarks and failed to take any action to remedy the situation, (Am. Compl. ¶¶ 129, 131), it is unclear if either defendant had supervisory authority over Salisbury.

"In or around 2010, [Potter-]Reger determined that despite the fact that plaintiff[] had . . . performed exceptionally well at her work by increasing her deliverable[6] from the year before from 96 to 122, plaintiff would not be receiving [an] 'Exceeds Expectations' job evaluation rating." (*Id.* ¶ 116.) After plaintiff refused to sign her 2010 evaluation because of this, "[Potter-]Reger labeled [her] a 'problem employee.'" (*Id.* ¶¶ 119-20.)

"In or around August 2012, plaintiff made a complaint to Human Resources (HR) and the Director of Child Welfare . . . about how African American female employees in the child welfare unit[7] were being unfairly treated." (*Id.* ¶ 123.) "On or about August 29, 2012, plaintiff . . . contacted [HR] regarding her concerns about her job performance evaluations." (*Id.* ¶ 126.)

"On or about September 21, 2012, [David] Fortune[8] . . . took [and shared] inappropriate pictures of plaintiff in an effort to accuse [her] of being 'lazy.'" (*Id.* ¶¶ 97, 132-33.) In or around 2013, after plaintiff

---

[6] Plaintiff does not define what this term means.

[7] Although plaintiff provides scant details, it can be inferred that she worked in the child welfare unit at RF SUNY. (Am. Compl. ¶ 106.)

[8] Fortune is an RF SUNY employee whose position is unspecified. (Am. Compl. ¶ 132.)

complained to Potter-Reger and Thompson that a particular project's incompleteness "could be seen as a waste of taxpayer money," Thompson "called plaintiff lazy and oppositional." (*Id.* ¶¶ 135-38.)

"In or around December 2014, plaintiff made requests for accommodation as to scheduling of classes and training," which were "denied by . . . McGuire," despite plaintiff's "belief" that "other similarly situated [w]hite-Caucasian employees had been provided these types of accommodations." (*Id.* ¶¶ 178-80.) Plaintiff also "filed a complaint with [HR] . . . regarding the unreasonably denied accommodation and the absence of her [annual] performance appraisal," which had not yet been completed. (*Id.* ¶¶ 182-83.) Plaintiff was then "compelled to meet with [a supervisor] to review an improperly back-dated evaluation" and "falsely accused of talking poorly of her co-workers." (*Id.* ¶¶ 184-85.) Plaintiff refused to sign the evaluation. (*Id.* ¶ 185.) On or about February 1, 2015, plaintiff resigned from RF SUNY. (*Id.* ¶ 186.)

During her tenure at RF SUNY, plaintiff alleges that black employees were not selected for several job openings as follows:

- In or around 2009, Thompson was promoted to become plaintiff's supervisor. (*Id.* ¶¶ 104, 106.) This position "was neither advertised nor opened up for plaintiff [or] other qualified

employees," despite the fact that she "continued to demonstrate her great value as an employee, bringing in the highest deliverables (96), and received an 'Exceeds Expectations' on her performance appraisal by . . . [a]cting supervisor, Diane Tesiny." (*Id.* ¶¶ 105, 108.)

• In or around 2009, Damon Barrymon, a white male, was hired to a position that required a bachelor's degree, even though he lacked such a degree. (*Id.* ¶¶ 110-12, 114.) Plaintiff does not indicate whether this position was opened up for others to apply or if any black employees applied for this position.

• On an unidentified date, Michelle McKenzie, a black RF SUNY employee, was not offered a promotion despite being recommended by a search committee, which included plaintiff. (*Id.* ¶¶ 142-47.) Additionally, after McKenzie's contract ended, she was not offered a job on another team as similarly-situated white employees were. (*Id.* ¶ 150.)

• On or about September 25, 2013, plaintiff interviewed with Trinkle for a job at Parsons Child and Family Center. (*Id.* ¶ 160.) Despite her qualifications, she did not receive the job. (*Id.* ¶¶ 161, 166.) Plaintiff alleges, "upon information and belief," that "Trinkle contacted [Potter-]Reger regarding plaintiff because [Potter-]Reger and Trinkle used to work together" and "[Potter-]Reger falsely relayed to Trinkle that plaintiff was 'a problem employee and failed to attend meetings.'" (*Id.* ¶¶ 162, 164.)

• On or about July 22, 2014, plaintiff applied for a position at NYSOCFS but received no response despite her qualifications. (*Id.* ¶¶ 167-69.) Plaintiff continued to apply for unspecified positions at NYSOCFS but was rejected for every position despite her qualifications. (*Id.* ¶¶ 176-77.)

• In or around October 2014, plaintiff and Jessica Bashaw, a white female, interviewed for an open position with RF SUNY; Bashaw was offered the position, despite plaintiff's qualifications.

(*Id.* ¶¶ 170-73.)  After Bashaw turned down the offer, Molly McHale, whose race is unspecified, received the position. (*Id.* ¶ 174.)

- In or around December 2014, Bashaw was given a supervisory position, even though she allegedly had less experience than two black female employees.  (*Id.* ¶¶ 152-55.)  It is unclear whether the position was opened up for others to apply or these two employees applied for the position.

- In or around January 2015, Michael Cozzens, a white male, received a supervisory position, which "was never posted nor opened up for plaintiff and other qualified employees to apply." (*Id.* ¶¶ 156-57.)

Following plaintiff's resignation at RF SUNY, she began working for WRI.  (*Id.* ¶ 189.)  In April 2015, someone from RF SUNY sent an email to plaintiff's work email address informing her that "Thompson wanted plaintiff to know that . . . 'Thompson . . . had now been promoted to a position at NYSOCFS.'"  (*Id.* ¶ 191.)  In or around September 2015, Lounsbury, plaintiff's supervisor and WRI's Executive Director who had previously worked at RF SUNY, "sarcastic[ally]" told plaintiff that he ran into Trinkle and she informed him "'what a great employee plaintiff was.'" (*Id.* ¶¶ 190, 196.)  In or around October 2015, Lounsbury "suddenly and inexplicably terminated plaintiff's employment without any cause or justification."  (*Id.* ¶ 199.)

After plaintiff's termination and until November 26, 2017, plaintiff applied for numerous job openings at RF SUNY, RFMH, and NYSOCFS; however, despite her qualifications, she was not hired. (*Id.* ¶¶ 201-38.) The circumstances surrounding these occurrences were as follows:

- On or about September 18, 2015, plaintiff applied for a position with RF SUNY but never received a response. (*Id.* ¶¶ 203-06.)

- On or about October 15, 2015, plaintiff applied for a position at RFMH but, after an interview, never received a response. (*Id.* ¶¶ 207-10.)

- On or about June 10, 2016 and June 22, 2016, plaintiff applied for positions at NYSOCFS but never received a response. (*Id.* ¶¶ 211-13, 214-16.)

- On or about July 13, 2016, plaintiff interviewed for a position at NYSOCFS, but "the interviewers . . . were not interested in hiring [her]." (*Id.* ¶¶ 217-18.)

- Trinkle began working for RFMH in August 2017. (*Id.* ¶ 220.) On or about August 27 and September 5, 2017, plaintiff interviewed for positions at RFMH, but did not receive a response after either interview, (*id.* ¶¶ 221-24, 226-29), and, on or about October 2, 2017, RFMH refused to give her information regarding its hiring manager or the status of her application, (*id.* ¶ 232).

- On or about August 31, 2017, plaintiff requested access to her RF SUNY employment records, which she did not receive until she followed up with RF SUNY's Affirmative Action Director on or about November 20, 2017. (*Id.* ¶¶ 225, 233.)

- On or about November 26, 2017, plaintiff applied for another

position with NYSOCFS, which she did not receive.  (*Id.* ¶¶ 234-36.)

Plaintiff alleges, "[u]pon information and belief," that she was not hired for any of these positions because RF SUNY, RFMH, NYSOCFS, and WRI used an electronic HR management system to "blacklist and discriminate against [her] because of [her] prior opposition to racial discrimination[] and because of [her] race."  (*Id.* ¶¶ 239-40.)

## B.   Procedural History

On March 26, 2018, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC).  (Dkt. No. 22, Attach. 2.[9]) Two days later, the EEOC issued a Dismissal and Notice of Rights.  (Am. Compl. at 40.)

Plaintiff commenced this action on June 21, 2018, (Compl., Dkt. No. 1), and later amended her complaint, (Am. Compl.).[10]  She asserts the

---

[9] Plaintiff's EEOC charge is properly considered at this stage because it is "a public document filed in an administrative proceeding, and is integral to plaintiff's [discrimination] claims."  *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 591 n.1 (E.D.N.Y. 2013) (internal quotation marks and citation omitted).

[10] On February 2, 2019, the court granted plaintiff the opportunity to "file a motion for leave to amend for a second time on or before March 14, 2019."  (Dkt. No. 39.)  Plaintiff never filed such a motion, and the Amended Complaint remains the operative pleading.

following claims against all defendants: disparate treatment based on race, retaliation, and hostile work environment claims pursuant to Title VII of the Civil Rights Act (Title VII),[11] (Am. Compl. ¶¶ 246-77); race discrimination and retaliation claims pursuant to New York State Human Rights Law (NYSHRL)[12] as well as 42 U.S.C. § 1981, (*id.* ¶¶ 278-304); a 42 U.S.C. § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, (*id.* ¶¶ 305-13); and conspiracy claims pursuant to 42 U.S.C. § 1983 and § 1985, (*id.* ¶¶ 314-21).

RFMH and Trinkle filed a motion to dismiss on October 11, 2018, (Dkt. No. 18), and RF SUNY and RF SUNY employees filed a motion to dismiss on October 19, 2018, (Dkt. No. 22).

### III. <u>Standard of Review</u>

Although the standard of review under Fed. R. Civ. P. 12(b)(6) is well settled, *see Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), it is still misconstrued by parties who seek to buoy sinking complaints, (*see, e.g.*, Dkt. No. 32 at 7-8; Dkt. No. 33 at 6-7 (citing *Conley v. Gibson*, 355 U.S. 41 (1957))); *see also Grasso v. United Grp. of*

---

[11] *See* 42 U.S.C. §§ 2000e-2000e-17.

[12] *See* N.Y. Exec. Law §§ 290-301.

*Cos.*, 1:16-cv-965, 2018 WL 1737619, at *5 n.7 (N.D.N.Y. Apr. 9, 2018); *United States v. $16,072.00 in U.S. Currency*, 1:17-cv-308, 2018 WL 1628828, at *3 (N.D.N.Y. Mar. 30, 2018).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." As such, "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility standard" does not impose a probability requirement, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

Determining whether a claim has facial plausibility is "a context-specific task that requires the . . . court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In applying this standard, all factual allegations are accepted as true and all reasonable

inferences are drawn in plaintiff's favor. *See Charles v. Orange County*, No. 17-3506-pr, 2019 WL 2236391, at *4 (2d Cir. May 24, 2019). However, the court is "'not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *In re Facebook, Inc.*, 797 F.3d 148, 159 (2d Cir. 2015) (quoting *Faber v. Met. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)). Likewise, "[t]hreadbare recitals of the elements of a cause of action" and "'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## IV. Discussion

Plaintiff's Amended Complaint begins with 245 paragraphs that span over thirteen years and include many insignificant factual matters as well as legal conclusions. (Am. Compl. ¶¶ 1-245.) Although plaintiff "restates and reasserts all of the[se] allegations" for each of her nine claims against all ten defendants, she does not attempt to connect any particular allegations to any particular claim. (*Id.* ¶¶ 246-321.) Consequently, it is virtually impossible to know which allegations are intended to support which claims. *See Rogers v. Brooks*, 8:18-cv-986, 2019 WL 1672364, at *2 n.3 (N.D.N.Y. Apr. 17, 2019) ("When a party is represented by counsel,

a court should not have to engage in guesswork to address every possible legal theory that is not clearly delineated in h[er] complaint." (internal citations omitted)).  Nonetheless, in an act of charity usually reserved for *pro se* litigants, the court has done its best to decipher plaintiff's claims. Given that the crux of plaintiff's employment discrimination claims under Title VII, NYSHRL, and § 1981 are governed by substantially the same standard, *see Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 468 (S.D.N.Y. 2009), the court addresses plaintiff's claims collectively—except where variances, such as timeliness considerations, are relevant.

**A.    Title VII Claims**

   *1.    Individual Defendants*

   As plaintiff concedes, (Dkt. No. 32 at 12; Dkt. No. 33 at 11), individuals are not subject to Title VII liability.  *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000).  Accordingly, the Title VII claims against RF SUNY employees and Trinkle are dismissed.

   *2.    Exhaustion and Timeliness*

      *a.    RF SUNY*

Before an aggrieved party can assert a Title VII claim in federal court, [s]he is generally required to exhaust the administrative remedies provided by the statute.  That is, a Title VII plaintiff

14

> generally must file a charge of discrimination with the EEOC within three hundred days after the alleged unlawful employment practice occurred, and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency.

*Duplan v. City of New York*, 888 F.3d 612, 621-22 & n.7 (2d Cir. 2018) (internal quotation marks and citations omitted).  This requirement "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (internal footnote omitted); *but see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[S]uch doctrines . . . are to be applied sparingly.").

"In addition to timeliness, the exhaustion requirements also mandate that the claims asserted in federal court be identical or 'reasonably related' to those filed with the EEOC."  *Saaidi v. CFAS, LLC*, 740 F. Supp. 2d 357, 363 (N.D.N.Y. 2010) (internal citation omitted).  A claim is "reasonably related" if (1) "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"; (2) "the complaint is one alleging retaliation by an employer against an employee for filing an EEOC

charge"; or (3) "the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks and citations omitted). The Second Circuit has recently clarified that "'reasonably related' retaliation claims are excused from the exhaustion requirement *only* if they arise during the pendency of an EEOC investigation *or* a timely filed federal case." *Duplan*, 888 F.3d at 624.

RF SUNY argues that all of plaintiff's Title VII claims must be dismissed for failure to exhaust because they are based on allegations that do not fall within the 300-day look back period or are not reasonably related to the claims filed with the EEOC. (Dkt. No. 22, Attach. 3 at 12.)

Given that plaintiff filed her EEOC charge on March 26, 2018, (Dkt. No. 22, Attach. 2)—absent any equitable exceptions to the exhaustion requirements—plaintiff's Title VII claims relying on RF SUNY's alleged conduct prior to May 30, 2017 must be dismissed. Given that plaintiff stopped working for RF SUNY in February 2015, (Am. Compl. ¶ 87), none of the allegations related to her employment there occurred within the 300-day look back period. However, plaintiff contends that all of RF SUNY's conduct is actionable under the "continuing violation" exception

16

because the Amended Complaint and the EEOC charge "detail a continuous practice and policy of racial discrimination," which "continued on until November 20, 2017, a date which falls within 300 days of the date plaintiff filed her [EEOC] charge." (Dkt. No. 32 at 10-11 (emphasis omitted).) The court disagrees.

To be sure, under the continuing violation doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, [then] all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155-56 (2d Cir. 2012) (internal quotation marks and citations omitted). However, the doctrine "is disfavored and will be applied only upon a showing of compelling circumstances." *Abboud v. County of Onondaga, New York*, 341 F. Supp. 3d 164, 177 (N.D.N.Y. 2018) (internal quotation marks and citation omitted). Additionally, the doctrine does not apply "to discrete unlawful acts, even where those discrete acts are part of a serial violation." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (internal quotation marks and citation omitted). On the other hand, because a hostile work environment claim is "composed of a series of

separate acts that collectively constitute one unlawful employment practice," *Morgan*, 536 U.S. at 117 (internal quotation marks and citation omitted), "a court may consider all of the acts that allegedly constitute the unlawful employment practice as long as at least one such act occurred within the [statute of limitations] period" and such acts are not "qualitatively different from one another," *Kimball v. Village of Painted Post*, 737 F. App'x 564, 568 (2d Cir. 2018) (internal quotation marks and citations omitted).

After carefully reviewing the Amended Complaint, there are only four incidents falling within the 300-day look back period that plaintiff tries to link to RF SUNY: (1) RF SUNY's delayed response to plaintiff's request for access to employment records, (Am. Compl. ¶¶ 225, 233); (2) plaintiff's unsuccessful application for a position at RFMH on August 27, 2017, (*id.* ¶¶ 221-24); (3) plaintiff's unsuccessful application for a position at RFMH on September 5, 2017, (*id.* ¶¶ 226-29); and (4) plaintiff's unsuccessful application for a position at NYSOCFS on November 26, 2017, (*id.* ¶¶ 234-36). Despite RF SUNY's contention that "there are no allegations in the EEOC [c]harge relating to any alleged discriminatory or retaliatory conduct by RF SUNY . . . after [plaintiff's] employment at RF

SUNY ended," (Dkt. No. 22, Attach. 3 at 10), three of these incidents were included in plaintiff's EEOC charge.  That is, the EEOC charge directly alleges RF SUNY's delayed response to plaintiff's request for access to employment records, (*id.*, Attach. 2 ¶¶ 55, 60), and includes allegations that RF SUNY interfered with plaintiff's applications in August and September 2017, (*id.* ¶¶ 53, 56).  Therefore—notwithstanding whether they can support actionable claims—these allegations were properly exhausted.

In contrast, the allegations regarding plaintiff's final job application on November 26, 2017 were not included in the EEOC charge.  (*Compare* Am. Compl. ¶¶ 234-36*, with* Dkt. No. 22, Attach. 2.)  Although such allegations may have arguably been within the scope of the EEOC investigation, *see Terry*, 336 F.3d at 151, they did not arise during the pendency of the investigation and thus are not excused from the exhaustion requirements, *see Duplan*, 888 F.3d at 624.  Thus, these allegations cannot be used to bring in prior conduct under the continuing violation doctrine because they were not properly exhausted themselves.[13]

_____

[13] RF SUNY confusingly analyzes whether certain allegations occurring prior to May 30, 2017, which were not included in the EEOC charge, are reasonably related to claims in the EEOC charge.  (Dkt. No.

As mentioned, plaintiff fails to address which of her Title VII claims are supported by any of these allegations.  (Dkt. No. 32 at 9-12.)  If these three properly-exhausted allegations are meant to support plaintiff's discrimination or retaliation claims, then they are discrete acts and the continuing violation doctrine cannot be used to bring in otherwise untimely conduct.  *See Gonzalez*, 802 F.3d at 220.  But, if the allegations contributed to plaintiff's Title VII hostile work environment claim, the continuing violation doctrine may be applicable.  *See Morgan*, 536 U.S. at 117.  However, plaintiff fails to explain how any of these allegations, which occurred after her resignation, are capable of altering the conditions of her work environment so as to state a hostile work environment claim.  *See Meyer v. N.Y. Office of Mental Health*, No. 12–CV–6202, 2014 WL 1767818, at *6 (E.D.N.Y. May 2, 2014) (declining to apply continuing

---

22, Attach. 3 at 9 (citing Am. Compl. ¶¶ 194-95, 198, 201, 203-06); Dkt. No. 35 at 3-4 (citing Am. Compl. ¶¶ 191, 203).)  To begin, RF SUNY inexplicably refers to such allegations as "timely," despite the fact that they occurred well before May 30, 2017.  (Dkt. No. 35 at 4, 5.)  To add to the confusion, RF SUNY then asserts that one of the same allegations "must be dismissed as untimely."  (Dkt. No. 35 at 7 & n.4 (citing Am. Compl. ¶ 203).)  To be sure, the "reasonably related" doctrine does not save claims that are otherwise untimely.  *Cf. Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1403 (2d Cir. 1993) ("Most of the allegations in [plaintiff's] EEOC charge are time-barred and thus cannot serve as predicates for allegations in the complaint said to be reasonably related.").

violation doctrine where plaintiff bringing hostile work environment claim was terminated prior to certain conduct).  Given that plaintiff fails to identify a timely incident that contributed to her hostile work environment claims, the continuing violation doctrine is inapplicable.  *See Kimball*, 737 F. App'x at 568.  Furthermore, plaintiff does not offer compelling reasons to apply this disfavored doctrine.  *See Abboud*, 341 F. Supp. 3d at 177.

Accordingly, none of RF SUNY's conduct occurring prior to May 30, 2017 can form the basis of plaintiff's Title VII claims.  *See Duplan*, 888 F.3d at 621-22.

### 3.    *Merits*

#### a.    *RF SUNY*

##### i.    *Delayed Response to Request for Employment Records*

RF SUNY's delayed response to plaintiff's post-resignation request for employment records cannot support a discrimination claim, *see Hopkins v. Bridgeport Bd. of Educ.*, 834 F. Supp. 2d 58, 64-65 (D. Conn. 2011) (holding Title VII's substantive discrimination provision inapplicable to post-employment conduct), but it may support a retaliation claim, *cf. Hughes v. Twenty–First Century Fox, Inc.*, 304 F. Supp. 3d 429, 448

(S.D.N.Y. 2018) ("The ability to 'blacklist' a former employee, and thus foreclose future employment possibilities, is but one example of an employer's power to punish a former employee for the exercise of her Title VII rights.") (internal quotation marks and citation omitted); *Noni v. County of Chautauqua*, 511 F. Supp. 2d 355, 364 (W.D.N.Y. 2007) ("[A] negative employment reference given to a potential employer seeking to hire the defendant employer's former employee qualifies as an adverse employment action."). However, as addressed more fully below, these allegations fail to state a retaliation claim because plaintiff eventually received the requested records after three months and the protected activity, the filing of her HR complaint, occurred approximately five years earlier. *See infra* Part IV.B.4.

(ii.) August 27 and September 5, 2017 Applications

Next, the court agrees that RFMH is a "separate entit[y]," and the Amended Complaint does not allege that RFMH is "affiliated with RF SUNY, or that RF SUNY had any control or authority over [its] hiring decisions." (Dkt. No. 22, Attach. 3 at 9.) Instead, plaintiff alleges that RFMH is a not-for-profit corporation responsible for its own conduct. (Am. Compl. ¶¶ 40, 44.) Thus, given that nothing in the Amended Complaint

allows the court to reasonably infer that RF SUNY had authority to make hiring decisions at RFMH, RF SUNY cannot be liable for RFMH's refusal to hire plaintiff for the positions she applied for on August 27 and September 5, 2017.  *Cf. Halpert v. Manhattan Apartments*, *Inc.*, 580 F.3d 86, 88 (2d Cir. 2009) (noting, in ADEA context, "[a] company is not, of course, liable for the hiring decisions made by [individuals] . . . [without] the authority to make hiring decisions on behalf of the company").

### b.    RFMH and Trinkle

### i.    Discrimination Claims

In light of the lack of factual allegations related to RFMH or Trinkle, the court agrees that plaintiff's allegations "woefully fail to state any claim of discrimination against RFMH or Trinkle under Title VII, [the NYS]HRL, or § 1981."  (Dkt. No. 18, Attach. 1 at 5-6; Dkt. No. 34 at 2-4.)  Instead, plaintiff's allegations boil down to a classic false syllogism that fails to support an inference of discrimination: "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me . . . ; therefore the bad thing happened because I am (fill in the protected class)."  *Pertillar v. AAA W. and Cent. N.Y.*, 5:16-cv-238, 2018 WL 583115, at *6 (N.D.N.Y. Jan. 26, 2018) (internal quotation marks,

footnote, and citation omitted).

Plaintiff alleges that, prior to applying at Parsons Child and Family Center, she believes "Trinkle contacted [Potter-]Reger regarding plaintiff because [Potter-]Reger and Trinkle used to work together" and "[Potter-]Reger falsely relayed to Trinkle that plaintiff was 'a problem employee and failed to attend meetings.'" (Am. Compl. ¶¶ 161-64.)  There are no other factual allegations in the Amended Complaint to support plaintiff's argument that Potter-Reger's statement can be inferred to mean that plaintiff was a problem employee because she "opposed racial discrimination at the workplace." (Dkt. No. 33 at 10, 16.)  First, Trinkle did not work for RFMH when this conversation with Potter-Reger allegedly took place.  (Am. Compl. ¶ 220.)  Second, plaintiff's argument is in direct contrast to her allegation that "[Potter-]Reger labeled [her] a 'problem employee'" because she refused to sign her job performance evaluation in 2010.  (Am. Compl. ¶ 120.)  Third, if "problem employee" could be reasonably inferred to mean "opposed racial discrimination," it may support a retaliation claim but would not support a discrimination claim. *See Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (explaining Title VII's "antidiscrimination provision seeks a workplace

where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status," whereas its "antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees").

ii.    *Retaliation Claims*

As for plaintiff's retaliation claims, RFMH and Trinkle argue that "[p]laintiff does not plausibly allege any protected activity in which she engaged with RFMH or Trinkle," and, even assuming she did, "she has not alleged any causal connection to her not being hired by RFMH or Trinkle." (Dkt. No. 18, Attach. 1 at 7, 8 (emphasis omitted).) In response, plaintiff does not identify the protected activity that allegedly prompted retaliation against her. (Dkt. No. 33 at 12-14.) Instead, as mentioned, she focuses on the conversation between Potter-Reger and Trinkle as the impetus for RFMH's refusal to hire her. (*Id.* at 13-14.) Assuming that the protected activity plaintiff is referring to is her HR Complaint in 2012, (Am. Compl. ¶ 123), her retaliation claims fail. There are no allegations to support a reasonable inference that Trinkle or RFMH were aware of any of the events occurring while plaintiff worked at RF SUNY, which means a

causal connection between this protected activity and any adverse employment action is lacking.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Accordingly, this portion of RFMH and Trinkle's motion is granted, and all of the discrimination and retaliation claims against them are dismissed for failure to state a claim.

## B.    NYSHRL and § 1981 Claims

*1.    Timeliness*

Generally, NYSHRL claims are subject to a three-year statute of limitations period, s*ee Abboud*, 341 F. Supp. 3d at 177, and § 1981 claims are subject to a four-year statute of limitations period, *see Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011).  Therefore, given that plaintiff filed her complaint on June 21, 2018, (Compl.), barring any equitable exceptions, incidents that occurred prior to June 21, 2015 cannot form a basis for plaintiff's NYSHRL claims and incidents that occurred prior to June 21, 2014 cannot form a basis for plaintiff's § 1981 claims.  Given that § 1981 provides the longer statute of limitations, the

court analyzes plaintiff's claims through that lens.[14]

> 2.    *Hostile Work Environment*[15]

> > a.    *RF SUNY and RF SUNY Employees*

The parties dispute whether plaintiff's § 1981 hostile work environment claim can be based on incidents occurring prior to June 21, 2014.  (Dkt. No. 22, Attach. 3 at 18; Dkt. No. 32 at 16.)  As previously mentioned, "[s]eparate acts are not properly treated as part of a single hostile work environment practice if they are 'qualitatively different' from one another."  *Kimball*, 737 F. App'x at 568 (internal citation omitted).

The only incidents that arguably contribute to plaintiff's hostile work environment claim—occurring between June 21, 2014 and plaintiff's resignation—are (1) her December 2014 "requests for accommodation as to scheduling of classes and training," which were denied despite her "belief" that "other similarly situated [w]hite-Caucasian employees had

_____

[14] That is, if plaintiff's § 1981 claims are untimely, her NYSHRL claims are necessarily untimely as well.

[15] Although plaintiff specifically enumerates a hostile work environment claim only under Title VII, (Am. Compl. ¶¶ 271-77), she alludes to a hostile work environment in her § 1981 and NYSHRL discrimination claims, (*id.* ¶¶ 280, 296-97), which is seemingly why the parties address these as separate claims, and the court follows suit.

been provided these types of accommodations," and (2) the subsequent meeting with Monoco where she was "compelled" to review an "improperly back-dated evaluation" and "falsely accused of talking poorly of her co-workers." (Am. Compl. ¶¶ 178-80, 184-85.) Plaintiff does not allege that she was denied any other requests for accommodations during her tenure at RF SUNY. (*See generally id.*) Additionally, although plaintiff fails to explain its significance or how it contributes to her hostile work environment claims, receiving a "back-dated" evaluation is also markedly different than her speculative allegation from 2010 that other white employees "would" receive a better rating on their performance evaluations "if they performed as well as [she] did." (*Id.* ¶¶ 116-18.) Moreover, different RF SUNY employees were allegedly responsible for these acts: whereas plaintiff alleges that the decision to deny her request was made by McGuire, (*id.* ¶ 179), and seems to fault Monoco for her "improperly back-dated evaluation," (*id.* ¶¶ 30, 184), she faults Potter-Reger for her 2010 performance evaluation, (*id.* ¶ 116). Furthermore, both timely incidents differ significantly from the crux of plaintiff's allegations, which detail prior incidents where plaintiff or other black employees were subjected to derogatory remarks concerning race. (*See,*

*e.g.*, *id.* ¶¶ 97, 101-03, 128, 132, 135-38.)  As such, the work environment practices that existed before June 21, 2014 are qualitatively different from those that occurred thereafter, and plaintiff's claims arising out of any pre-June 21, 2014 harassment are untimely.  *See Kimball*, 737 F. App'x at 568.

As for the merits of plaintiff's claim, "[t]o state a hostile work environment claim, a plaintiff must first demonstrate that she experienced harassment sufficiently severe or pervasive to alter the conditions of [her] . . . employment and create an abusive working environment." *Wheeler v. Bank of N.Y. Mellon*, 256 F. Supp. 3d 205, 218 (N.D.N.Y. 2017) (internal quotation marks and citations omitted).  "In considering whether a plaintiff has met this burden, courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks and citation omitted).  "Moreover, the test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to

create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Id.* (internal quotation marks and citation omitted).

Given that the overwhelming majority of the alleged harassment is untimely, the incidents of denying plaintiff's request for an unspecified accommodation, backdating her annual evaluation, and accusing her of talking poorly of co-workers were not "extraordinarily severe" so as to have "altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). Moreover—even considering the pre-June 21, 2014 allegations involving a few race-related remarks that are alleged to have occurred intermittently over the span of six years—the harassment experienced by plaintiff was not severe or pervasive enough to constitute a hostile work environment. *See Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 83 (2d Cir. 2009) ("For racist comments, slurs, and jokes to constitute a hostile work environment, . . . there must be more than a few isolated incidents of racial enmity.") (internal quotation marks and citations omitted); *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be

deemed pervasive.") (internal quotation marks and citation omitted); *Wheeler*, 256 F. Supp. 3d at 219 ("[C]onduct that is merely offensive and not severe or pervasive enough to create an objectively hostile or abusive work environment will not establish a . . . discrimination claim.") (internal quotation marks and citations omitted).

As such, plaintiff's complaint fails to state a hostile work environment claim against RF SUNY and RF SUNY employees.

### b.    RFMH and Trinkle

Plaintiff "concedes that the Amended Complaint has not stated a hostile work environment [claim] against Trinkle [or] RFMH." (Dkt. No. 33 at 14.) For this reason and the reasons stated by RFMH and Trinkle, (Dkt. No. 18, Attach. 1 at 9), these claims are dismissed.

### 3.    Failure to Hire or Promote[16]

The continuing violation doctrine does not apply to plaintiff's § 1981 claims for failure to hire or promote because "certain adverse employment practices such as . . . failure to promote . . . are discrete acts and cannot

---

[16] Although the Amended Complaint does not specifically state a claim for "failure to hire or promote," both parties analyze plaintiff's "race discrimination" claim, (Am. Compl. ¶¶ 292-99), as such, (Dkt. No. 22, Attach. 3 at 21-24; Dkt. No. 32 at 18-20).

be considered as part of an ongoing pattern or policy of discrimination." *Wheeler v. Bank of N.Y. Mellon*, 6:16-CV-1176, 2018 WL 3730862, at *3 (N.D.N.Y. Aug. 6, 2018) (internal quotation marks and citations omitted). Therefore, the only timely allegations related to job openings at RF SUNY are (1) in or around October 2014 when McHale received a position that plaintiff interviewed for, (Am. Compl. ¶¶ 170-74); (2) in or around January 2015 when Cozzens received a supervisory position that "was never posted nor opened up for plaintiff and other qualified employees to apply," (*id.* ¶¶ 156-57); and (3) on or about September 18, 2015 when plaintiff applied for a new position at RF SUNY but received no response, and the position was kept open for almost a year, (*id.* ¶¶ 203-06).

At this stage, plaintiff must allege that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (internal quotation marks and citation omitted); *see Aulicino*, 580 F.3d at 80. In sum, the plaintiff must show that "she applied for an available position for which she was

qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (internal footnote omitted). However, "[a]t the initial stage of a litigation, the plaintiff's burden is minimal—[s]he need only plausibly allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015) (internal quotation marks and citation omitted). A plaintiff may do this by "show[ing] that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself," which, "[i]n the context of a promotion, . . . means comparing the qualifications of the plaintiff with those of the person promoted." *Wheeler*, 2018 WL 3730862, at *6 (internal quotation marks and citations omitted). "A plaintiff may also create an inference of discriminatory intent by pointing to verbal remarks that are probative of discrimination." *Id.* (internal quotation marks and citation omitted).

RF SUNY argues that plaintiff's § 1981 failure to promote claim involving the position she interviewed for in or around October 2014, (Am. Compl. ¶¶ 170-74), and the supervisory position she applied for in or

around January 2015, (*id.* ¶¶ 156-57), must be dismissed because plaintiff does not sufficiently allege that she was just as, or more, qualified than McHale or Cozzens.  (Dkt. No. 22, Attach. 3 at 22-23.)  Similarly, RF SUNY argues that "[p]laintiff does not allege she was not hired for the [September 18, 2015] position because of her race; an essential element to her discrimination . . . claims."  (*Id.* at 15 (emphasis omitted).)  The court agrees.[17]

To be sure, plaintiff alleges that she was "distinctly qualified for the[] positions for which she has applied for," (Am. Compl. ¶ 238), because (1) she "has held similar positions since approximately 2005 and has consistently received outstanding positive job performance evaluations," (*id.* ¶ 250); (2) she "is an experienced software instructor, and has worked as such with RF [SUNY] for about 10 years," (*id.* ¶ 204); (3) in or around 2009, plaintiff "br[ought] in the highest deliverables (96), and received an 'Exceeds Expectations' on her performance appraisal," (*id.* ¶¶ 104-05);

---

[17] It should be noted, however, that RF SUNY's reliance on *Dechberry v. N.Y. City Fire Dep't* for the proposition that allegations post-dating plaintiff's resignation cannot constitute an adverse employment action, (Dkt. No. 22, Attach. 3 at 15), is a misrepresentation of that decision, which merely noted that a hostile work environment claim cannot be premised on conduct occurring after a plaintiff's employment ended. *See* 124 F. Supp. 3d 131, 157 n.13 (E.D.N.Y. 2015).

and (4) in or around 2010 she "increas[ed] her deliverable from the year before from 96 to 122," (*id.* ¶ 116). However, plaintiff fails to plausibly allege that she was equally or more qualified than McHale or Cozzens for the respective positions. (*Id.* ¶¶ 156-59, 174.) Moreover, plaintiff includes no specifics whatsoever as to the job requirements for each position. *Cf. Wheeler*, 2018 WL 3730862, at *5-6 (holding plaintiff plausibly alleged another employee had less experience than her by describing specific requirements for position, how plaintiff satisfied such requirements, and how other individual did not satisfy such requirements). In light of the foregoing, plaintiff's allegations fail to provide minimal support for her proposition that RF SUNY was motivated by discriminatory intent in filling these positions. *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) ("Without any specificity as to the qualifications considered for each position . . . it is equally possible that plaintiffs have not been promoted for valid, non-discriminatory reasons."); *Wheeler*, 2018 WL 3730862, at *7 (dismissing failure to promote claims where plaintiff merely stated "the promoted individuals . . . posses[s] less relevant work experience compare[d] to [her]" but failed to provide any detail regarding their comparative qualifications).

35

Furthermore, even if the verbal remarks that plaintiff cites to are considered as background evidence, (Dkt. No. 32 at 19 (citing Am. Compl. ¶ 103)), they fail to raise an inference of discriminatory intent because the majority of the remarks were made approximately six years earlier, by an individual whose position plaintiff does not provide and who seemingly died sometime prior to 2014, (Am. Compl. ¶¶ 97, 142). *See Jacobs v. N.Y.C. Dep't of Educ.*, 18-1330-cv, 2019 WL 2261447, at *1 (2d Cir. May 28, 2019) (holding stray remarks uttered by various supervisors, some of whom were not involved in employment decision, are not evidence of discriminatory intent); *see also Wheeler*, 2018 WL 3730862 at *7. Accordingly, plaintiff's § 1981 failure to hire or promote claims are dismissed.

### 4. *Retaliation*

To state a retaliation claim, a plaintiff must plausibly allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (internal quotation marks and citation omitted).

RF SUNY argues that plaintiff fails to state a § 1981 retaliation claim because she "cannot establish a causal connection between the protected activity and the adverse employment action." (Dkt. No. 22, Attach. 3 at 30.) In response, plaintiff argues that the temporal proximity between her complaint to HR in December 2014 and subsequent adverse employment actions establishes such a connection. (Dkt. No. 32 at 24-25.) However, plaintiff fails to address RF SUNY's facially-meritorious argument that the 2014 HR complaint was not a protected activity. (Dkt. No. 22, Attach. 3 at 31 n.8.) The court agrees that plaintiff does not allege facts from which the court can reasonably infer that her 2014 complaint could have alerted anyone that it was made in opposition to unlawful conduct. *See Fattoruso v. Hilton Grand Vacations Co.*, 525 F. App'x 26, 28 (2d Cir. 2013) (holding plaintiff's "belief that he was being treated 'unfairly' [did not] transform his complaints . . . into charges over unlawful discrimination"); *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it is understood, or could reasonably have understood, that the plaintiff's opposition was directed at [prohibited] conduct."). As such, plaintiff's 2014 HR complaint

does not constitute a protected activity, and, the only protected activity occurring before the employment action that plaintiff identifies is plaintiff's 2012 HR complaint.  (Am. Compl. ¶ 123.)

"[A] causal connection between protected activity and an adverse employment activity on the basis of timing alone[] [can be inferred if] the temporal proximity [is] 'very close.'"  *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 616 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009) (quoting *Breeden*, 532 U.S. at 273).  At least one court in this Circuit has held that temporal proximity of just over one month between a protected activity and an adverse employment action is "arguably 'very close.'"  *See Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 417 (S.D.N.Y. 2006).  On the other end of the spectrum, the Second Circuit has held that temporal proximity of three months is not sufficient to satisfy the causal connection element.  *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990).

Plaintiff identifies the following conduct occurring after her 2012 HR complaint: being denied a request for accommodation in December 2014, her annual performance appraisal not being completed by December 2014, being compelled to meet with her director, being accused of talking

poorly about co-workers, and receiving no response to her September 2015 application for a position at RF SUNY.[18]  (Dkt. No. 32 at 24-25; Am. Compl. ¶¶ 178-85, 203-06.)  Even assuming that each of these instances constitutes an adverse employment action, they took place years after plaintiff's 2012 HR complaint, which is far too remote of a temporal proximity to support an inference of discrimination.  *See Hollander*, 895 F.2d at 85-86.  Accordingly, this portion of RF SUNY's motion is granted and plaintiff's retaliation claims are dismissed.

## C.    Section 1983 and Section 1985 Claims

### 1.    *State Action*

#### a.    *RF SUNY and RF SUNY Employees*

RF SUNY and RF SUNY employees argue that the Amended Complaint does not plausibly allege that they acted under color of state law because plaintiff "has not alleged any entwinement between RF SUNY and New York State other than a blanket statement that a symbiotic

---

[18] Plaintiff does not argue that the positions that she was not offered on or around October 2014 and January 2015, (Am. Compl. ¶¶ 156-57, 170-74), or RF SUNY's delayed response to her request for employment records, (*id.* ¶¶ 225, 233), support her retaliation claims.  (Dkt. No. 32 at 24-25.)  In any event, these incidents do not support a retaliation claim because they suffer from the same temporal remoteness as the incidents that were identified by plaintiff.  *See Hollander*, 895 F.2d at 85-86.

relationship exists." (Dkt. No. 22, Attach. 3 at 32-33.) The court agrees.

"Private actors and institutions generally are not proper defendants to a 42 U.S.C. § 1983 action, because they do not act under color of state law." *White v. Monarch Pharm., Inc.*, 346 F. App'x 739, 740 (2d Cir. 2009) (internal citation omitted). However, a private institution may be liable under § 1983 if "there is a sufficiently close nexus between the State and the challenged action of the [private institution] so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). Such a nexus exists when

> the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies.

*Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (internal quotation marks and citation omitted). When analyzing allegations of state action, courts must begin "by identifying the specific conduct of which the plaintiff complains." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (internal quotation marks and citation omitted); *see Young v. Halle Hous. Assocs.*, 152 F. Supp. 2d 355, 364

(S.D.N.Y. 2001) ("[T]he crucial relationship for a finding of state action is between the governmental entity and the *action* taken by the private entity, not . . . between the governmental entity and the private *actor*.").

First, plaintiff's allegations that "RF [SUNY] maintained a symbiotic relationship and close nexus to the State of New York," (Am. Compl. ¶ 11), and "RF [SUNY] was performing State functions, delegated to it by the State of New York," (*id.* ¶¶ 12), are conclusory allegations that the court is not bound to accept. *See In re Facebook*, 797 F.3d at 159. The court must accept as true plaintiff's allegations that RF SUNY was "organized under the laws of the State of New York for the exclusive purpose of serving the State University of New York (SUNY)," provides "essential administrative services" to SUNY, (Am. Compl. ¶ 4), and its Board of Directors, which "oversees the operations of the corporation," "draws [its] members from various constituencies including SUNY faculty, researchers, [and] campus and system administrators," (*id.* ¶¶ 5-6). But there are no further factual allegations from which to infer that RF SUNY had a sufficiently close nexus with the State of New York. For instance, there are no allegations regarding SUNY's relationship with New York

State,[19] how many SUNY officials sit on the Board, or how the Board is involved in any of the employment decisions referenced throughout the Amended Complaint.  (*See generally* Am. Compl.)  Without such allegations, the court cannot reasonably infer that the state "is entwined in the management or control" of RF SUNY or that RF SUNY "is controlled by an agency of the State."  *See Flagg*, 396 F.3d at 187.

Furthermore, the test is concerned with the nexus between the specific action taken and the governmental entity.  *See Young*, 152 F. Supp. 2d at 364.  The only action identified by plaintiff in her response does nothing to help her cause.  (Dkt. No. 32 at 26.)  That is, she argues that Thompson is employed by RF SUNY, and "[w]hile on loan from [RF SUNY] to NYSOCFS, he issue[d] threats of discrimination against plaintiff in his official capacity" and then "follow[ed] up on the threat[s] by utilizing his position at NYSOCFS to negatively impact plaintiff's career opportunities."  (*Id.* (citing Am. Compl. ¶¶ 191-219).)  However, plaintiff fails to point to any allegations from which it can be reasonably inferred

_____

[19] Although courts have held as a matter of law that SUNY "is an integral part of the government of the State [of New York] and when it is sued the State is the real party," *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), this does nothing to explain SUNY's involvement with specific actions of RF SUNY.  *See Young*, 152 F. Supp. 2d at 364.

that Thompson, as an RF SUNY employee, was responsible for conduct that can be fairly attributed to the State.  First, it is dubious whether the email that plaintiff received regarding Thompson's promotion can be reasonably inferred to constitute a "direct threat."  (Am. Compl. ¶¶ 191, 194.)  But, in any event, plaintiff's allegation that "Thompson, by virtue of his position at RF [SUNY], was working with WRI and with NYSOCFS," (Am. Compl. ¶ 195), is inadequate to plausibly allege that Thompson acted under color of state law when he requested someone else email plaintiff to inform her of his new position at NYSOCFS, (*id.* ¶ 191).  *See White*, 346 F. App'x at 741 (affirming dismissal of § 1983 claims where plaintiff "fail[ed] to state a claim against the private defendants because her allegations of a nexus between the private defendants and the State [we]re vague and conclusory, and fail[ed] to demonstrate that the actions of the defendants should be treated as state action") (internal citation omitted).  As such, plaintiff's § 1983 claims against RF SUNY and RF SUNY employees are dismissed.

   *b. RFMH and Trinkle*

   Similarly, plaintiff has failed to plausibly allege that RFMH or Trinkle acted under color of state law so as to subject them to § 1983 liability.

Like RF SUNY, RFMH is a private entity, (Am. Compl. ¶ 40), and the Amended Complaint does not contain anything more than conclusory allegations regarding its relationship with the State of New York. *See Holden v. East Hampton Town*, 15-CV-4478, 2017 WL 1317825, at *6 (E.D.N.Y. Mar. 31, 2017) (holding plaintiff failed to plausibly allege state action where pleadings lacked allegations of state involvement with the specific injury giving rise to the action). As such, these claims are dismissed.[20]

### 2. Conspiracy Claims

"To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (internal quotation

---

[20] Even assuming that defendants acted under color of state law, "[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal citation omitted). This provides an alternative basis for dismissal of plaintiff's § 1983 claims, given that plaintiff fails to allege a violation of a right distinct from her asserted employment discrimination and retaliation claims.

marks and citations omitted). To state a claim for conspiracy, plaintiff must allege "facts showing that the defendants actually entered into such an agreement." *Id.* A conspiracy claim will not lie where the plaintiff fails to allege facts showing a violation of her constitutional rights. *See Roesch v. Otarola*, 980 F.2d 850, 854 (2d Cir. 1992) (holding conspiracy claims against defendants properly dismissed where plaintiff could not establish underlying § 1983 liability against state officer).

To state a conspiracy claim under § 1985(3), there must be facts alleging:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087-88 (2d Cir. 1993) (internal citation omitted). "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* at 1088 (internal quotation marks and citation omitted).

### a. RF SUNY and RF SUNY Employees

RF SUNY and RF SUNY employees argue that "[p]laintiff has failed to plead any facts demonstrating that any of the defendants entered into an agreement or reached an understanding to willfully deprive [p]laintiff of her rights." (Dkt. No. 22, Attach. 3 at 33-34.) Specifically, they argue that "[p]laintiff does not allege that any of the other non-RF SUNY defendants have access to the [electronic HR management system] or use the tool to influence RF SUNY hiring decisions." (*Id.* at 34.)

The first part of this argument overlooks plaintiff's allegation that "defendants RF [SUNY], RFMH, WRI, and . . . NYSOCFS, are utilizing . . . [the electronic HR management system].'" (Am. Compl. ¶ 239.) However, the court agrees with RF SUNY that plaintiff does not plausibly allege that any of the defendants used the tool to blacklist her so as to state a conspiracy claim. Although it is reasonable to infer from plaintiff's allegations that defendants had the capability to sign into the system and the ability to create notes regarding job candidates, (*id.* ¶ 240), there are no allegations from which it can be reasonably inferred that defendants used the tool to blacklist her—such as what was inputted, when it was inputted, who was responsible for whatever was inputted, who viewed whatever was inputted, or when it was viewed. (*See generally id.*)

Plaintiff's vague quote of an excerpt from an unspecified training manual, (*id.* ¶ 240), is simply inadequate.  *See Iqbal*, 556 U.S. at 678.  Ultimately, plaintiff alleged that defendants had the ability to conspire against her, which is an allegation that could be levied against any individuals capable of communication.  More is needed to nudge conspiracy claims across the line from conceivable to plausible.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (internal citations omitted); *Clark v. Dominique*, 798 F. Supp. 2d 390, 405 (N.D.N.Y. 2011) (dismissing §1983 and §1985 conspiracy claims where plaintiff failed to allege facts that enabled the court to infer a conspiracy).

Accordingly, plaintiff's §§ 1983[21] and 1985 conspiracy claims against RF SUNY and RF SUNY employees are dismissed.

> b.  *RFMH and Trinkle*

The above-analysis applies equally to RFMH and Trinkle.  The only other allegation—aside from defendants' use of the electronic HR

---

[21] Alternatively, plaintiff's § 1983 conspiracy claims are dismissed because she fails to allege the requisite state action.  *See supra* Part IV.C.1; *Roesch*, 980 F.2d at 854.

management system—that plaintiff points to in support of her conspiracy claim against RFMH and Trinkle is Trinkle's discussion with Potter-Reger, an RF SUNY employee, concerning plaintiff's application at Parsons Child and Family Center. (Dkt. No. 33 at 16.) However, it cannot be reasonably inferred that Potter-Reger and Trinkle formed an agreement to violate plaintiff's rights based on what is alleged of that discussion. *See Clark*, 798 F. Supp. 2d at 405. Accordingly, plaintiff has failed to state a claim for conspiracy against either RFMH or Trinkle. *See Iqbal*, 556 U.S. at 678.

## D. <u>Remaining Claims</u>

Plaintiff does not respond to RF SUNY's facially-meritorious argument that the allegations involving her performance evaluations and requests for accommodations cannot support a § 1981 disparate treatment claim. (*Compare* Dkt. No. 22, Attach. 3 at 24-25, *with* Dkt. No. 32 at 20-21); *see Johnson v. Lew*, No. 1:13–CV–1072, 2015 WL 4496363, at *5 & n.6 (N.D.N.Y. July 23, 2015) ("In this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the

argument possess[es] facial merit, which has appropriately been characterized as a 'modest' burden.").  Instead, plaintiff merely reiterates the same arguments regarding her § 1981 failure to promote or hire claims that have already been addressed.  Accordingly, to the extent that they are not covered by the court's previous analysis, plaintiff's disparate treatment claims are dismissed.

Next, to the extent that plaintiff specifically enumerated a constructive discharge claim, (Am. Compl. ¶ 251), RF SUNY argues that it "must be dismissed for the same reasons she is unable to establish a hostile work environment," (Dkt. No. 22, Attach. 3 at 28).  Given that "[t]he standard for constructive discharge is even higher than that required to prevail on a hostile [work] environment claim," *Mandel v. Champion Int'l Corp.*, 361 F. Supp. 2d 320, 327 (S.D.N.Y. 2005) (internal footnote omitted), the court agrees and grants this portion of RF SUNY's motion.

Finally, the remainder of plaintiff's arguments are rejected.  To the extent that plaintiff purports to allege claims beyond those that have been addressed above, such claims are dismissed under Fed. R. Civ. P. 8(a), which requires that a plaintiff provide adequate notice to defendants of the claims alleged against them.  *See Wynder v. McMahon*, 360 F.3d 73, 79

49

(2d Cir. 2004).  Although plaintiff's Amended Complaint arguably put defendants on notice of the claims stemming from the factual allegations addressed above, the remainder is ambiguous, confusing, and merits dismissal.  *See Ferran v. City of Albany*, 1:14-cv-1362, 2016 WL 7378915, at *9 (N.D.N.Y. Dec. 20, 2016).  Accordingly, those "claims" are dismissed.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the motion to dismiss filed by RFMH and Trinkle (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that the motion to dismiss filed by RF SUNY and RF SUNY employees (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that the Clerk terminate RF SUNY, Thompson, Potter-Reger, McGuire, Monaco, RFMH, and Trinkle as parties to this action; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Daniel J. Stewart to schedule further proceedings in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

June 20, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge